Mahajan v. Sessions, 162565. Mr. Cheshry. Good morning, your honors. May it please the court, my name is Kagendra Cheshry. I'm here for the petitioner. In this case, the petitioner was actively involved in political activities in Nepal, where he was persecuted by Maoists, and he had amply testified, and the record below shows that there were demands for physical attacks in which he was hospitalized, and subsequent to that, he had to flee the country, and his asylum application was denied by the immigration judge, based on the certain omissions and certain inconsistencies that were not in the heart of the claim, because the respondent had provided sufficient testimony and corroborated documents, such as his political party letters, letters from his hospital, and also as well as the letter that demand of the ransom, and also party's letter, and also he provided letters from his parents and factory workers, and he supported his case in that way. Your honor, this court also had held in the past, in the matter of Gao, that the trivial inconsistencies or omissions are not exactly going to the heart of adverse credibility finding. The judge, immigration judge, was hard-pressed to find inconsistency, not credibility, based on... Let me direct you to the description of the injuries he sustained. Yes. So the initial application... Yes. Referred to the injuries as minor. The testimony makes the injuries seem much more severe or significant, and the immigration judge considered that, among other things, as a separate ground for determining or making the adverse credibility determination. Yes. Can you explain how that is not an Your honor, it is a question of how somebody perceived injuries as to the medical practitioner and somebody who has some little knowledge about the medical injuries. Actually, the hospital letter clearly mentions that he had been, he actually testified that he has been treated for head injuries and other type of injuries. He didn't specifically explain that there was a cut on his arm as well, but his focus was on the head, and that's what he explained to that. The judge didn't buy that argument, and the judge still found that he said his testimony as to minor injuries was the major inconsistency here, which is not the case, because he had already said that this was the main... His focus was on the head, and the other part of the body was also included in that, although it into all the injuries that he has sustained. That is not inconsistent. You say in your application, I sustained minor injuries, or there's a letter that describes minor injuries, and then during your hearing, you say they were carrying chains, sticks, and other weapons too. They started hitting me with the hands, with the legs, with the sticks, and the blood, you know, came out of my body, and he says that his body turned black and blue. There was so much blood coming out, they pierced my arm with a knife. How do you square that with the... as a matter of detail, with just the, oh, these were minor injuries? Your Honor, his solemn application did not go into that greater detail about the injuries. He did mention the injuries, and they were not really... If he had not mentioned it at all, that would be a different question here, but he had mentioned the injuries, and he has said he received head injuries and other bruises, and other part of the body. That really brings into, when he explained it at the testimony, and that is not inconsistent, and I think therefore, also the other issues that the judge tried to bring in here... What about his omission regarding the phone call from the Maoists? Isn't that central to... It is not central. It is because, Your Honor, he testified to the court, and also he did mention that when they tried to shoot him at that point, he knew who these people were, and actually his father got a call claiming responsibility for that shooting. It doesn't really have any discrepancy here. It was that he already knew that these were the people who had shot him, although they missed it. It was just an additional detail. Yes, and as far as the government's argument or the judge's findings in terms of the factory closing and opening, he testified consistently that factory was closed when he was there. When he came here, it was open at some point. That is not the main issue here in the case, because that happened after the fact, and as well as he was studying here in the university, and at that time he could not continue his study, but the fact that he was having mental shock, he didn't go to the hospital, that is not in I think these are sub-side-stepped matters. He already suffered what happened to him. He already testified to it, and based on all the evidence, the judge was basically trying to put together different points, trying to make it a consistency. Let's say that maybe there's a question, particularly given the Gao case, we remand this. What would lead me to believe that the immigration judge would come up with a . . . would arrive at a different conclusion? Well, I think if you . . . There was a demeanor finding. Clearly, this judge did not believe . . . Your . . . the demeanor in this case is just only one change in demeanor. That's not in the record, but there is no other demeanor issue here in this case. So that is how it's been explained in this case, that the respondent, the judge did not find him . . . his demeanor was lacking in many, many respects. If you look at the substantial evident rule, the documents, his testimony, whatever he has given, as to how he overcame that into the credibility issue, I don't think it matches your honor. And therefore, in the Gao case, we have even more significant omissions there. Even the person didn't even know the dates. Even there was a medical issue. Even the pastor didn't even say that there was some kind of injuries. So there are a lot of discrepancies there, if you are looking at the . . . But these omissions are not central to the claim that the respondent was . . . Or, it's not really that they're not . . . So now that I understand your argument a little bit more clearly, you're not really saying that it's not central to the claim. You're just saying that it's detail, levels of detail. Level of details, and the judge tried to take them apart, tried to support her determination that she wanted to deny the case based on credibility. Thank you. I think you've reserved three minutes for rebuttal, so we'll hear from Mr. Tennyson. Good morning. May it please the court, Robert Tennyson for the government. Substantial evidence supports the immigration judge's decision in this case. The petitioner, in his testimony, gave a story that had significant omissions and inconsistencies, some of which went to the heart of the claim. Some of which, even if they did not go to the heart of the claim, were major. And in addition, in his attempt to explain away these omissions and inconsistencies, when given the opportunity by the immigration judge to explain away the omissions and inconsistencies, gave varying answers, expanding, changing, shifting answers in response to her questions. And as a immigration judge found there to be a problem with the petitioner's demeanor. Let's look first at the demeanor finding. The immigration judge relied on two sets of explanations when she went through, when she found his demeanor to be, you know, based upon non-responsive, evasive, and rehearsed testimony. She looked first at his response to the question as to why he did not mention in either his own statement or in, or was, it wasn't mentioned in his father's letter, the phone call to the father from the Maoists of January 9th, 2008. And he first responded, well, he thought it was in the statement. And then, when he's pressed on this, he says, well, I personally knew it was the Maoists. And so I didn't think that I had to put it in my statement, which is somewhat different than saying I didn't put it in my statement. Then finally, when pressed on this issue, he responds that I suspected the Maoists, but I really only knew when they called my father. And it's this sort of shifting, changing explanation that gives the immigration judge pause. Now, the immigration judge in this case did not say that the demeanor finding by itself would have led to the result. Is that right? The immigration judge says this strange thing. She says, even if I didn't find that you had this demeanor problem, all of these inconsistencies over here, or maybe she did, or it may be implicit in her finding that the demeanor finding was sufficient alone. But if this Court thinks, just reading it, that she just didn't make that conclusion, or it wasn't clear enough, that's perfectly ideal. At the very least, in combination with all of the other determinations with regard to the omissions and the inconsistencies, certainly there's substantial evidence to support that. Mr. Chetri's point with respect to some of the other grounds that the government has pointed us to is that these are not really omissions so much as they're levels of detail. So, for example, the injury or the phone call. Could you address that? Sure. One of the things this Court has said on occasion is that really you can't draw a line, a strict line, between omissions and inconsistencies in certain circumstances. On occasions, you will have language like, say, for example, he had said, I had bruises and injuries in his statement. And then he comes in and he elaborates and he says, I'm bleeding from my arms. I had a deep cut. I had deep wounds to my arm and to my head. In that case, it may look more and more like it's an elaboration. It's a level of detail. But here he says, and this is the difference between an inconsistency and a mere omission, minor injuries and bruises. And that actually occurs in both his own statement and without regard to the head injury, which the physician points out, with regard to any other injuries. They are described as minor injuries and bruises. So it's not just a level of detail there. It is a difference in distinction. It is quantitatively, no, not quantitatively, qualitatively different testimony. And that's the same sort of thing that you get with regard to, I mean, you do have an omission with regard to the phone call. There's no mention of it in the father's letter. There's no mention of it in his own statement. But the phone call is a qualitative fact that one would expect to have been in both the letter and in the statement. Because he was driving home on a motorcycle at night and bullets shot past him. He has no basis to know who shot him. And you would expect somewhere he would indicate, either in his statement or it would be in the letter, how he knew that it was the malice. The statement makes it clear that he strongly believed that it was the malice. The statement could be read to strongly, to state that, right? I mean, it's true. That it was the malice. Right. He doesn't, and let me go to the statement itself in here. About his turning around. There are paths. Let's see. The next bullet missed my ears with inches confused and nervous. I made a U-turn and headed back to the city. I was worried for my family, but my friends consoled me by saying that the family was not in danger, as they were not involved in any political party. Still, the malice called my place and inquired about me. Now, he doesn't say when they called and inquired about him. He doesn't say the malice shot at me. I believe the malice shot at me. There's no indication here that he had that strong belief. Now, the immigration judge doesn't point to this. So it's not something that's not a basis for a decision. Her decision is based upon that he doesn't recite the phone call. That no, there's no mention of the phone call to the father. And you would expect, if he wants to claim that the malice had called, had been the ones who shot him, that he would give some indication as to why he did that. He has two incidents in his claim where he is the direct target of an attack, the shooting and the beating. And in both of these instances, with the shooting with regard to his father, with the phone call to the father, and with regard to the inconsistency with regard to the injuries, there are either omissions or inconsistencies that go to the heart of the claim. So just to go back to the injuries part, the letter refers to injuries to the head, without referring to them more specifically as major or minor injuries, and then minor injuries and bruises. That is correct, Your Honor. So why can't we view what you would describe as a true inconsistency as really a further elaboration of the injuries to the head part? Right. Well, I think that could be done with regard to the injuries to the head. I mean, but when at the, you know, when elsewhere in the letter he says minor injuries and bruises, well, there's the injury to the arm that he goes into detail about in his testimony to the immigration judge, describing it as a lengthy cut, a deep cut, and a significant one. It didn't require any stitches at the end. It did not require any stitches, he said. He just came back and he showed a scar that was an inch long. That is correct, Your Honor. What's the harm, Mr. Tennyson? We've got, I think, a case where the immigration judge and the BIA did not have the benefit of Hong Fei Gao. What's the harm of remanding it? So we can be sure, so you can be sure. So we can be sure. I think the immigration judge was pretty clear as to which particular findings would uphold her decision. And while some, and while Gao is focused to a large extent. Weren't there some omissions that would squarely fit within Gao? Yes, Your Honor. Well, then under those circumstances, it seems to me you can't, we can't be sure how the judge reached her decisions. It might have been a cumulative decision based upon all of the, all of the, all of the omissions and inconsistencies that she saw, including the ones that Gao might question. Well, Your Honor, that's, I think the one that most clearly comes within Gao, and I think there are several here that don't. I think there are several that are outside of Gao. I think the, the omission having to do with the, with the shot would fall outside of Gao. I think arguably the medical documents do relate to Gao, especially considering that Gao had a circumstance in which an individual did not introduce any medical documents. And in response, there was a question about, there was an issue with regard to the omission there. But there were also inconsistencies, and those are outside the scope of Gao. The immigration judge was very clear in saying that there were certain of these inconsistencies or omissions that, standing alone, were so significant, so went to the heart of the claim, that she would find that, that she would base an adverse credibility determination on them, regardless of the rest of it. And that was with regard to the omission with the gunshot. That was clearly with regard to the inconsistency with the physician, the physician's letter. She does say that the inconsistency with respect to the statement, right, with his minor injuries and bruises, when he states that, that that would not alone support an adverse credibility finding. But it's very clear that she has given a multilayered decision. It's, it's like an onion, where you peel back and say that this one does not, is not supported by substantial evidence, where she says that there are other ones. And as a result, I think this court would not come to the conclusion that, that the immigration, you know, that clearly the immigration judge needs to look at this again. If the court has no further questions, the government rests. Thank you so much. Mr. Cheshire. Thank you, Your Honor. Your Honor, the government has already said that the, the medical issue about the cut in the arm, actually he received bandage, there was no stitches. And therefore, the government agreed that, that alone cannot stand for adverse credibility finding. If you were to see in that line, so basically what is left here is the, you know, whether or not he, he meant, his college dropping out of the college situation in the USA. I don't know, this is not really related to that adverse credibility, as well as the, the, factory reopening issue, that is also not really majorly central issue of the credibility here. So, there. His reasons for leaving college, I thought, that was a, that was an inconsistency. That was a mission situation. There was. Yeah, there was a. Express, express. Yes, Your Honor, the, he left the college, he said that why did he leave that? That was the reason that he was having mental, socks, as well as, you know, he said there was a financial issue. But I think that was a, that was an omission, but it doesn't go to the heart of the claim, because it happened when he was here, why he left the college. It is not going to say that what happened to him and why his underlying persecution was inconsistency, as opposed to what happened to him when he was here. So these are all minor, trivial factors, and in the matter of, in the Goh court, clearly mentions even, even difficult issues that are analyzed over there, as compared to our, in this case, Your Honor. So, I'm respectfully requesting that the petitioner admit the burden. Substantial evidence supports that. The judge also, in her decision, actually, she was repetitively saying the same thing over and over, trying to figure out how to deny the case. That's what my observation is on the decision. So, so therefore, the totality of circumstances does not support the finding of incredible testimony, and I think the respondent has met this burden. The BIA clearly did not look into those records, how the judge reached to the conclusion of the case. Thank you very much. All reserve the decision. Thank you.